**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMES BAILEY,
D.O.C. # Q13954,**

      **Plaintiff,**

**vs.**                                             **Case No. 4:22cv169-AW-MAF**

**DR. LUIS A. LOPEZ-RIVERA,
CENTURION, LLC, and the
FLORIDA DEPARTMENT
OF CORRECTIONS,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

The pro se Plaintiff filed a civil rights complaint pursuant to 42 U.S.C.

§ 1983, ECF No. 1, alleging a violation of his Eighth Amendment rights

when he did not receive a timely diagnosis or appropriate medical care

after injuring his back.  Plaintiff was granted leave to proceed in forma

pauperis, and his complaint was deemed sufficient for service of process.

ECF Nos. 16, and 18.  It took some time for service to be carried out, but

on April 11, 2023, Defendants Centurion and the Department of

Corrections {hereinafter "DOC"} filed a motion to dismiss.  ECF No. 40.  A

separate motion to dismiss was filed by Defendant Luis A. Lopez-Rivera.[1]

ECF No. 42.  Plaintiff was directed to file his opposition to those motions,

ECF Nos. 41 and 44, and he timely filed one response in opposition to both

motions.  ECF No. 52.

**Allegations of the Complaint**

Plaintiff alleged that he initially injured his back on April 17, 2016, and

declared a "medical emergency," because of "severe pain."  ECF No. 1 at

5.  The nurse told him it was not an emergency because he "was not

bleeding or dying."  *Id.*  Over the course of the next three years, Plaintiff

was given insufficient medication which did not alleviate the pain, x-rays

which did not diagnose his condition, and he was directed to undergo

physical therapy which caused him more pain.  Plaintiff complained that

medical personnel chastised him for wasting their time, and Defendant

Lopez-Rivera became angry with Plaintiff for filing grievances, telling

Plaintiff that the more he "complains the less help he'll get."  *Id.* at 11.

---

[1] As this case progresses, it would be beneficial for the Defendant to clarify his
surname.  Plaintiff brought this case against Dr. Luis A. Lopez-Rivera.  ECF No. 1 at 2.
The motion to dismiss consistently references the Defendant's name as Dr. Luis Lopez-
Riveria.  ECF No. 42.  The Court will refer to this Defendant as Plaintiff has done.

Case No. 4:22cv169-AW-MAF

After three years, Plaintiff was evaluated by a new doctor - Dr.

Sanders - who diagnosed Plaintiff with a torn rhomboides major muscle on

June 7, 2019.  *Id.* at 15.  Plaintiff alleged that Dr. Sanders told him that his

injury could have been repaired if caught earlier, that he would always have

severe, chronic pain, and he would likely need shoulder surgery in about

20 years due to limited mobility.  ECF No. 1 at 15-16.

Plaintiff asserts Eighth Amendment claims against Defendant

Dr. Lopez-Rivera for being deliberately indifferent to his serious medical

needs.  *Id.* at 17, 24.  Plaintiff also claims Dr. Lopez-Rivera violated his

First Amendment rights by procrastinating with treatment, testing, and

diagnoses in retaliation for Plaintiff's use of the prison grievance process.

*Id.* at 17.  Additionally, Plaintiff contends that the DOC and Centurion were

deliberately indifferent to his medical needs by allowing a custom or policy

of neglect and disregarding inmates' medical issues to continue.  *Id.* at 24.

Moreover, Plaintiff claims those Defendants allowed Defendant Lopez-

Rivera to not provide treatment as retaliation.  *Id.*  Plaintiff also alleged that

Centurion followed a DOC policy which limited "pain medication to 30 pills

every 90 days" even though a physician prescribed Meloxicam for him and

directed it be taken once a day for 90 days.  *Id.* at 15, 25.  As relief, Plaintiff

seeks compensatory and punitive damages, a declaratory judgment, and injunctive relief.  *Id.* at 17, 25.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).  A complaint's well-pleaded factual allegations are accepted as true, but "conclusory allegations" unsupported by facts are "not entitled to an assumption of truth."  Randall v. Scott, 610 F.3d 701, 709-10 (11th Circ. 2010). Thus, dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965 (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 at 556).  When reviewing a motion to dismiss, the Court must construe the complaint in the light most favorable to the Plaintiff and accept the factual allegations as true.  The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002).  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in Twombly, 127 S. Ct. at 1966).

**Motions to Dismiss**

Defendant Centurion argues that Plaintiff's complaint fails to state a claim because "Plaintiff wholly fails to allege that Centurion of Florida, LLC, had a custom or policy that constituted deliberate indifference to a constitutional right."  ECF No. 40 at 11.  To the degree Plaintiff challenges the policy limiting pain medication, Centurion argues that Plaintiff's factual allegations reveal that DOC implemented the policy and, therefore, Centurion cannot be held responsible.  *Id.*  Centurion also argues that Plaintiff did not comply with the pre-suit notice requirements set forth in Chapter 766.  *Id.* at 12-15.

The DOC argues that Plaintiff's complaint should be dismissed for failure to state a claim.  ECF No. 40 at 16.  More specifically, DOC contends that Plaintiff fails to show that the "medication policy violated his Eighth Amendment rights."  *Id.* at 18.

Dr. Lopez-Rivera argues that the complaint should be dismissed against him because Plaintiff did not sufficiently allege a claim for deliberate indifference.  ECF No. 42 at 1-2.  Dr. Lopez-Rivera contends that Plaintiff has not demonstrated a serious medical need, nor that the Defendant was deliberately indifferent to that need.  *Id.* at 9-10.  Further,

this Defendant presents the same argument as Centurion - that Plaintiff did

not comply with the pre-suit notice requirements set forth in Chapter 766.

*Id.* at 12-15.  Finally, Dr. Lopez-Rivera states that Plaintiff's claim should

"be dismissed with prejudice as Plaintiff" filed his complaint well past "the

two year statute of limitations."  *Id.* at 16.

**Analysis**

**I.      Presuit Notice Under Florida Law**

Although Plaintiff did not specifically assert a state law claim in his

complaint, he did allege that Dr. Lopez-Rivera's actions "were so

[inappropriate] that they could be seen [as] intentional malpractice."  ECF

No. 1 at 24.  Given the liberal construction that is required for a pro se

litigant, *see* Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200,

167 L. Ed. 2d 1081 (2007), it is accepted that Plaintiff has asserted a claim

for medical malpractice against Dr. Lopez-Rivera.  Indeed, Plaintiff does

not dispute that fact and claims that "he did in fact comply with" the state

law requirements to bring such a claim.  ECF No. 52 at 4.  Plaintiff said that

he put Defendant Centurion on notice, and that the "Defendant waived the

requirement that Plaintiff had to have a written medical corroboration by a

Doctor as Plaintiff was indigent [and] was not [allowed] to [receive] copies of his medical records . . . ." *Id.*

First, liberal construction of a pro se prisoner's complaint does not permit the Court to  rewrite a deficient pleading in order to sustain a cause of action.  Fils v. City of Aventura, 647 F.3d 1272, 1285 (11th Cir. 2011) (cited in Cox v. United States, No. 20-62372-CV, 2021 WL 1178493, at *1 (S.D. Fla. Feb. 10, 2021), report and recommendation adopted, No. 20-62372-CIV, 2021 WL 1177486 (S.D. Fla. Mar. 29, 2021)).  In other words, the Court cannot insert a claim not properly raised by the Plaintiff. Here, Plaintiff's complaint can be read to include a medical malpractice claim against Defendant Lopez-Rivera, but Plaintiff did not assert such a claim against Defendant Centurion.

In support of his argument that he complied with the presuit requirements, Plaintiff attached a copy of a letter he purportedly mailed to Dr. Lopez-Rivera on August 17, 2022.  ECF No. 52 at 7.  The letter states: "Please be advised that I, James Bailey, #Q13954, intend to file suite [sic] against you for violating my 8th Amen. Right [sic]."  *Id.*  Plaintiff sent an identical letter to Defendant Centurion on that same date, August 17th.

Florida's Medical Malpractice Act "sets out a complex pre-suit investigation and notice procedure that" a claimant must follow before filing a medical negligence or malpractice claim.[2] <u>Wheeler v. Corizon Med. Health Care Servs.</u>, No. 5:16cv96-LAC-EMT, 2016 WL 7743516, at *3 (N.D. Fla. Dec. 27, 2016), report and recommendation adopted, No. 5:16cv96-LAC-EMT, 2017 WL 113063 (N.D. Fla. Jan. 11, 2017) (citing to <u>Kukral v. Mekras</u>, 679 So. 2d 278, 280 (Fla. 1996)).  The relevant statute, FLA. STAT. § 766.106(2), provides that "[a]fter completion of presuit investigation pursuant to s. 766.203(2) and before filing a complaint for medical negligence, a claimant shall notify each prospective defendant of intent to initiate litigation for medical negligence" through one of several specified means.  FLA. STAT. § 766.106(2)(a).

Plaintiff provided notification to the two Defendants on August 17, 2022.  However, Plaintiff's complaint was filed in this Court on April 25, 2022, which is four months <u>before</u> Plaintiff sent his letters to the Defendants.  Plaintiff did not give *presuit* notice - he gave after suit notice; thus, Plaintiff did not comply with the statute.

---

[2] As defined by the statute, a "[c]laim for medical negligence" or "claim for medical malpractice" means "a claim, arising out of the rendering of, or the failure to render, medical care or services." FLA. STAT. § 766.106(1)(a).

Moreover, the statute requires that, prior to sending the notice "of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that: (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and (b) Such negligence resulted in injury to the claimant." FLA. STAT. § 766.203(2). The investigation must be undertaken before the notice is sent because "[c]orroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert . . . at the time the notice of intent to initiate litigation is mailed . . . ." FLA. STAT. § 766.203(2); *see also* Phelps v. Delphi Behav. Health Grp., LLC, No. 19-61557-CIV, 2021 WL 8895134, at *3 (S.D. Fla. June 15, 2021). Plaintiff has not demonstrated that a presuit investigation was undertaken.

Notwithstanding, Plaintiff contends that he is excused from doing so because he was not timely provided is medical records and, thus, the requirement was waived. ECF No. 52 at 4. In support of that argument, Plaintiff has cited to Martin Mem'l Med. Ctr., Inc. v. Herber, 984 So. 2d 661, 663 (Fla. 4th DCA 2008), a case in which the plaintiff argued that she

should be "excused from providing a corroborating affidavit because Martin Memorial failed to provide the requested medical records within ten business days from the date of the request." The court concluded that "[b]ecause Martin Memorial did not provide the records within ten days, . . . Ms. Herber was under no obligation to furnish a corroborating affidavit with her notice of intent or any time thereafter." Herber, 984 So. 2d at 664.

That case is not helpful to Plaintiff, however, because he is still required by statute to conduct "a good faith investigation," even if records are not furnished within ten days. 984 So. 2d at 664. The statute requires a plaintiff seeking to recover on a medical negligence claim to "substantiate his claim before filing his lawsuit." Hines v. Wexford Health Sources, Inc., 786 F. App'x 913, 917 (11th Cir. 2019) (citing Fla. Stat. § 766.203). Courts have held that although the failure to provide medical records may waive the requirement to submit an affidavit from a medical expert which establishes a basis for the medical negligence or malpractice claim, the "waiver does not 'dispense[ ] with the requirement of a good faith investigation....'" 984 So. 2d at 664 (quoted in Hines, 786 F. App'x at 917). Here, Plaintiff has not alleged that a good faith investigation was conducted

to determine that a named Defendant was negligent in providing care or treatment to him as required by § 766.203(2).

In addition, Plaintiff's complaint alleged that on June 7, 2019, he was informed by Dr. Sanders of the correct diagnosis of his injury - a torn rhomboides major muscle.  Dr. Lopez-Rivera contends that because Plaintiff's complaint was not filed until April 25, 2022, this claim must be dismissed because the statute of limitations had expired.  ECF No. 42 at 16.  In Florida,

> [a]n action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.

Fla. Stat. § 95.11(4)(b) (quoted in Mangin v. Robertson, No. 6:07cv1649-ORL-18KRS, 2008 WL 2522576, at *3 (M.D. Fla. June 24, 2008).  Because Plaintiff discovered the diagnosis in June of 2019, his medical malpractice claim must have been filed by June of 2021.  In light thereof, and for all the other reasons cited above, the motions to dismiss should be granted as to Plaintiff's state law medical malpractice claim.

## II.    Claim Against Centurion

Centurion argues that Plaintiff has not sufficiently pled a deliberate indifference claim and that Centurion "cannot be vicariously liable under § 1983 for the constitutional wrongs of its employees or agents."  ECF No. 40 at 8.  Rather, Plaintiff "must provide not only that his constitutional rights were violated, but also that the entity has a custom or policy that constituted deliberate indifference to that constitutional rights and that the policy or custom caused the violation."  *Id.* at 9.

The Eighth Amendment of the United States Constitution requires that prisoners be provided treatment for their serious medical needs. Failing to provide treatment because a defendant is "deliberately indifferent" to a prisoner's plight results in cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  To allege an Eighth Amendment claim for the denial of medical care, a Plaintiff must allege: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

Centurion does not argue that Plaintiff was not suffering from a serious medical need.  Instead, Centurion focuses on the fact that Plaintiff did not allege that Centurion had a custom or policy which violated his rights.  ECF No. 40 at 11.  That failure is crucial because a healthcare provider's liability cannot be based on "a theory of respondeat superior or vicarious liability alone."  Est. of Hand by & through Hand v. Fla. Dep't of Corr., No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (citing Hartley ex rel. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  As a private entity, Centurion may be held liable under 42 U.S.C. § 1983 "only under certain circumstances."  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (cited in Hand, 2023 WL 119426, at *6).  Those circumstances exist when the entity, in this case Centurion, is alleged to have "caused the violation of [Plaintiff's] constitutional rights."  Hand, 2023 WL 119426, at *6 (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978)).  "In sum, § 1983 liability against Centurion must be conditioned on the existence of an official policy or custom that constitutes deliberate indifference."  2023 WL 119426, at *6 (citing to Buckner v. Toro, 116 F.3d 450, 453 (11th Cir. 1997) (stating "the Monell policy or custom requirement

applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates.").

Here, Plaintiff has not pointed to a custom or policy of Centurion, nor has he shown that any custom or policy caused a violation of his Eighth Amendment rights. In response to the motion to dismiss, Plaintiff argues that Centurion had "a custom or policy that allowed their staff to practice intentional malpractice . . . ." ECF No. 52 at 3. No such allegation was alleged in the complaint, however, and no facts were provided to support that conclusory assertion. Plaintiff has not pointed to a specific policy of Centurion that allows such conduct. It appears that Plaintiff's claims against Centurion are not based on Centurion's policies but, rather, are based on the "actions by Defendant's staff." *See* ECF No. 52 at 4.

Furthermore, Plaintiff's argument that Dr. Lopez-Rivera was delegated as a final policymaker must be rejected. Plaintiff contends that the responses to his grievances show Dr. Lopez-Rivera was given "final policymaking authority" concerning "the medical affairs at O.C.I." and that his "actions [were] not constrained by official policies or subjected to reviews." ECF No. 52 at 4. However, the response to Plaintiff's grievance,

as alleged by Plaintiff, stated only that it was "the responsibility of the

health care staff to determine the appropriate treatment regiment." *Id.*

That does not show policy delegation.  Instead, it shows that Department of

Corrections' officials - those persons responding to Plaintiff's grievances -

did not interfere with the decisions of medical staff who ordered a particular

therapy or treatment.  More importantly, Plaintiff's complaint reveals that

the responses provided to his grievances were statements made by prison

officials, not by Centurion.  Plaintiff has not shown that Centurion delegated

policymaking authority to Dr. Lopez-Rivera.

Plaintiff's claim against Centurion should be dismissed.  The failure to

allege a policy or custom created by Centurion is fatal to this claim because

Centurion may only be held liable for a custom or policy that shows

deliberate indifference.  Hand, 2023 WL 119426, at *6.  There must be "a

persistent and wide-spread practice" rather than "random acts or isolated

incidents" to establish a custom or policy.  2023 WL 119426, at *6.

Because no such allegations have been presented, Centurion's motion to

dismiss, ECF No. 40, should be granted.

### III.   Claim Against DOC

The only policy alleged in Plaintiff's complaint concerned a policy which limited pain medication.  ECF No. 1 at 15.  Plaintiff alleged that DOC implemented a new policy which restricted pain medication to 30 pills every 90 days even though the medication [was] to be taken once a day, and the Doctor" gave Plaintiff a prescription for "90 pills every 90 days."  *Id.*  Plaintiff alleged that the policy caused him "to suffer needlessly."  *Id.*; *see also* ECF No. 1 at 25.  Plaintiff alleged that a physician, Dr. Witter, told him that he would refill Plaintiff's Meloxicom prescription "when he could, but his hand[s] were tied due to D.O.C.'s policy."  *Id.* at 16.

The DOC argues that Plaintiff has not shown that the medication policy violated his Eighth Amendment rights.  ECF No. 40 at 18.  The DOC contends that it's "policy did not take away Plaintiff's medication nor [restrict] his access to it."  *Id.*  DOC argues that Plaintiff could "access a refill of his medications by utilizing the sick call procedure."  *Id.*

Analysis of this argument must begin with the recognition that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson, 551 U.S. at 94, 127 S. Ct. at 2200 (citations omitted).  Plaintiff alleged that the policy

limited his access to pain medication and that he suffered because of it.

Plaintiff alleged that his doctor told him that his hands were tied; thus, it

cannot be accepted that Plaintiff had access to pain medication through

sick call.

"A core principle of Eighth Amendment jurisprudence in the area of

medical care is that prison officials with knowledge of the need for care

may not, by failing to provide care, delaying care, or providing grossly

inadequate care, cause a prisoner to needlessly suffer the pain resulting

from his or her illness."  McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir.

1999).  Cases within the Eleventh Circuit have "recognized that prison

officials may violate the Eighth Amendment's commands by failing to treat

an inmate's pain."  McElligott, 182 F.3d at 1257 (citing to Brown v. Hughes,

894 F.2d 1533 (11th Cir. 1990)).  Accepting Plaintiff's allegations as true,

he has alleged that the DOC implemented a policy which deprived him of

pain medication causing him to suffer needlessly.  That is sufficient to state

a claim and the DOC's motion to dismiss should be denied.

## IV.    Claims Against Dr. Lopez-Rivera

Plaintiff's remaining claims are the Eighth Amendment claim that

Dr. Lopez-Rivera was deliberately indifferent to his serious medical needs

and a First Amendment claim for retaliation.  ECF No. 1 at 17.  As noted above, Dr. Lopez-Rivera argued that the complaint should be dismissed because Plaintiff did not sufficiently allege a claim for deliberate indifference, ECF No. 42 at 1-2, and because Plaintiff did not comply with the pre-suit notice requirements to pursue the state law medical malpractice claim.  *Id.* at 12-15.  Dr. Lopez-Rivera did not address Plaintiff's First Amendment claim.

Notably, Plaintiff did not specifically state that he was asserting a First Amendment claim.  However, Plaintiff claimed that the Defendant :maliciously procrastinated in retaliation to Plaintiff's grievances . . . ."  ECF No. 1 at 17.  Given the liberal construction due a pro se pleading, Plaintiff's complaint must be deemed to have raised the claim under the First Amendment.  Because this claim was not addressed, the complaint is sufficient to continue against Defendant Dr. Lopez-Rivera.

As for the Eighth Amendment claim, Defendant has argued that "Plaintiff fails to sufficiently allege that he suffered from a serious medical need."  ECF No. 42 at 9.  A serious medical need is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention."  Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176,

1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536

U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).  Alternatively, "a

serious medical need is determined by whether a delay in treating the need

worsens the condition."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307

(11th Cir. 2009) (citing to Hill).  "In either case, 'the medical need must be

one that, if left unattended, poses a substantial risk of serious harm.'"

Mann, 588 F.3d at 1307 (quoting Farrow v. West, 320 F.3d 1235, 1243

(11th Cir. 2003)).  Defendant argues that back pain is not a serious

condition and that the complaint does not show "Plaintiff required

immediate or emergent medical care or that his back pain, if left

unattended, posed a substantial risk of serious harm."  ECF No. 42 at 9.

Accepting Plaintiff's allegations as true, Plaintiff alleged that he

repeatedly complained of pain, but the Defendant failed to treat him.

Plaintiff said that medical staff, including Dr. Lopez-Rivera, thought Plaintiff

only had a pulled muscle.  ECF No. 1 at 6.  However, Plaintiff's repeated

complaints of ongoing pain and physical therapy which provided no relief

should have prompted additional action.  Plaintiff alleged that Dr. Lopez-

Rivera told him he was "just getting old."  Id. at 8.  However, Plaintiff was

ultimately diagnosed with a torn rhomboides major muscle and told that, had it been "caught earlier," it could have been repaired.  In other words, he alleged that as a result of the lack of medical care, his condition worsened.  Plaintiff claimed he will always have severe, chronic pain, and limited mobility.  ECF No. 1 at 15-16.  At this stage of the litigation, it cannot be said that Plaintiff did not sufficiently allege a serious medical need.

Moreover, other courts have found that a torn muscle or a "torn rotator cuff that causes chronic pain constitutes a serious medical need." Ibarra v. Zamora, No. 117cv00144MJSPC, 2017 WL 1375190, at *3 (E.D. Cal. Apr. 17, 2017); Jenkins v. Marcelo, No. CV 19-5537-VBF (JEM), 2020 WL 7094078, at *6 (C.D. Cal. Aug. 24, 2020), report and recommendation adopted, No. LACV1905537VBFJEM, 2020 WL 7094056 (C.D. Cal. Sept. 30, 2020) (Plaintiff's torn rotator cuff was a "serious medical need" and Plaintiff alleged "significant pain and loss of range of motion, his cartilage deteriorated" during delay in receiving MRI, "and his condition eventually required shoulder replacement surgery"); Dumas v. Sisson, No. 16-cv-9602 PA (AS), 2018 WL 6017027, at *5 (C.D. Cal. Jan. 22, 2018) (delay in providing treatment for prisoner's shoulder injury, despite assessing a

possible torn muscle, stated Eighth Amendment claim); Oliver v.

Pennsylvania Dep't of Corr., No. CIV.A. 13-5321, 2014 WL 80725, at *6,

n.5 (E.D. Pa. Jan. 8, 2014) (noting that extreme pain and the possibility of

permanent injury could qualify as a serious medical need at the motion to

dismiss stage of litigation).  "Ignoring or refusing to investigate and treat

such a condition can constitute deliberate indifference."  Ibarra, 2017 WL

1375190, at *3.

To be clear, medical malpractice does not constitute deliberate

indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple

difference in medical opinion between the prison's medical staff and the

inmate as to the latter's diagnosis or course of treatment support a claim of

cruel and unusual punishment."  Harris v. Thigpen, 941 F.2d 1495, 1505

(11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir.

1989)); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).

"[A] complaint that a physician has been negligent in diagnosing or treating

a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment."  McElligott, 182 F.3d at 1254 (quoting

Estelle, 429 U.S. at 106, 97 S. Ct. at 292).  However, "a prison official may

nonetheless act with deliberate indifference by delaying the treatment of serious medical needs . . . ."  McElligott, 182 F.3d at 1255.

In Estelle, the prisoner received treatment for his back injury (bed rest, muscle relaxants and pain relievers), but complained that more should have been done in the way of diagnosis.  The Court rejected that as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.

Here, Plaintiff alleged that he made repeated complaints about pain, and advised that the prescribed physical therapy was not helping, but no further action was taken beyond repeated x-rays which did not identify his problem.  He complained that pain medication such as Ibuprofen "did not help."  ECF No. 1 at 11.  A prison medical doctor violates the Eighth Amendment when he is aware of the need for care, but fails to provide that care, or delays care, causing "a prisoner to needlessly suffer the pain resulting from his" injury.  McElligott, 182 F.3d at 1257.  At this point in the litigation, Plaintiff's complaint should not be dismissed.  He has sufficiently

alleged a serious medical need and the denial of medical care for that need.  Whether Plaintiff can ultimately *prove* his claim is an evaluation that should take place at the summary judgment stage of litigation.  However, Defendant Lopex-Rivera's motion to dismiss Plaintiff's complaint should be denied as to the Eighth Amendment claim.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that: (1) the motion to dismiss filed by Defendants Centurion and the Department of Corrections, ECF No. 40, be **GRANTED in part** and **DENIED in part**; the complaint should be **DISMISSED** as to the claim against Centurion, but denied as to Plaintiff's claim against the Department of Corrections; (2) the motion to dismiss filed by Defendant Lopes-Rivera, ECF No. 42, should be **GRANTED in part** and **DENIED in part**; the state law claim should be **DISMISSED,** but the constitutional claims under the First and Eighth Amendments should proceed; and (3) this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on September 19, 2023.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 4:22cv169-AW-MAF

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.